UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL, | No. 2: 19-cv-0266 KJM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ANN MARIE SCHUBERT, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 32.) For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

Legal Standard for 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability

requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013). Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend. See e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Plaintiff's Allegations

This action proceeds on plaintiff's original complaint against defendant Sacramento County District Attorney Schubert and Sacramento County Deputy District Attorney Tucker.[1] (ECF No. 1.) Plaintiff was housed at California State Prison-Sacramento ("CSP-Sac") when the alleged deprivations occurred. (Id. at 5.)

---

[1] Defendants O'Riley and Baughman have been dismissed. (ECF No. 15.)

Plaintiff alleges that on January 25, 2018, defendants Schubert and Tucker filed a felony complaint charging plaintiff with three counts of battery. (Id.) On April 12, 2018, Correctional Officer O'Riley told plaintiff that he (plaintiff) had to attend court at 10:00 a.m. at the courthouse in Sacramento. (Id.) Instead, at 9:30 a.m., Correctional Officer O'Riley took plaintiff to a back supply storage room at CSP-Sac. (Id.)

In the storage room, plaintiff sat at a table in front of a television screen where a judge appeared. (Id. at 5-6.) A public defender and two correctional employees sat at the table with plaintiff. (Id. at 6.) Plaintiff was informed by the correctional employees that this was his court appearance. (Id.) The public defender never spoke to plaintiff. (Id.)

Plaintiff asked the public defender and the correctional employees, "Where is my court appointed attorney, Ms. Kelly Babineau?" (Id.) The correctional employees told plaintiff that Kelly Babineau was not allowed into the prison because she was a private attorney. (Id.) Plaintiff was told that Kelly Babineau was present in the courtroom at the courthouse in Sacramento, along with the judge and defendant Tucker. (Id.)

Plaintiff was informed that if he had any questions for his attorney, he would have to inform the public defender or the correctional employees, and they would relay his questions to his attorney over the television monitor. (Id.) Plaintiff had no confidential access to his court appointed attorney, Kelly Babineau. (Id.)

Plaintiff was informed that the legal name for his television appearance was "video court." (Id. at 7.) Plaintiff alleges that he heard Kelly Babineau over the television speaker but he could not see her. (Id.) Plaintiff alleges that he was not allowed to "communicate with [Kelly Babineau] directly" on April 12, 2018. (Id.)

Plaintiff alleges that he could not understand the charges being brought against him by the prosecutor and could not access his attorney for legal advice at the April 12, 2018 hearing. (Id.)

Plaintiff alleges that defendants Schubert and Tucker created a policy at CSP-Sac to prosecute inmates by video court in the back of a supply room, without direct connection with their attorneys. (Id. at 9.) Plaintiff alleges that this policy violated his Sixth Amendment right to confidentially communicate with his attorney and his right to physically appear at the April 13,

3

1 | 2018 court proceeding.  (Id.)

2 | Defendants' Request for Judicial Notice

Defendants request that the court take judicial of a printout of the Sacramento County Superior Court's Case Information for People v. Kareem Howell, Case no. 18FE001413, available online.  The "case information" appears to be the court docket.  A copy of this docket is attached to the request for judicial notice.  The undersigned takes judicial notice of this docket. See Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (judicial notice may be taken of "undisputed matters of public record, including documents on file in federal or state courts.")

Defendants request that the court take judicial notice of the certified reporter's transcripts of the proceedings held on April 13, 2018 and June 27, 2019 in People v. Kareem Howell, Case No. 18FE001413.  Copies of these transcripts are attached to the request for judicial notice.  The undersigned takes judicial notice of these transcripts.  See Pickup v. Brown, 2012 WL 6024387, at *3 (E.D. Cal. Dec. 4, 2012) ("Transcripts from other court proceedings are proper subjects of judicial notice.") (citations omitted).  The content of these transcripts is undisputed.  See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (under Federal Rule of Evidence 201, courts may take judicial notice of facts contained in public records that are not subject to reasonable dispute).

The judicial notice of these documents does not convert defendants' motion to dismiss to a summary judgment motion.  See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) (a court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment).

Defendants' Motion to Dismiss

*Do Defendants Create the At-Issue Video Policy?*

As stated above, plaintiff alleges that defendants Schubert and Tucker created a policy that permitted the prosecution of inmates in the back room at CSP-Sac by video.  Plaintiff alleges that this policy violated his Sixth Amendment right to communicate confidentially with his

4

attorney. Defendants move to dismiss this claim on the grounds that they did not create the at-issue video policy. Defendants state that the California State Legislature statutorily authorized video court appearances when it enacted California Penal Code § 977(c).

California Penal Code § 977(c)(1) provides, in relevant part,

> The court may permit the initial court appearance and arraignment of defendants held in any state, county, or local facility within the county on felony or misdemeanor charges, except for those defendants who were indicted by a grand jury, to be conducted by two-way electronic audiovideo communication between the defendant and the courtroom in lieu of the physical presence of the defendant in the courtroom. If the defendant is represented by counsel, the attorney shall be present with the defendant at the initial court appearance and arraignment, and may enter a plea during the arraignment. However, if the defendant is represented by counsel at an arraignment on an information in a felony case, and if the defendant does not plead guilty or nolo contendere to any charge, the attorney shall be present with the defendant or if the attorney is not present with the defendant, the attorney shall be present in court during the hearing. The defendant shall have the right to make his or her plea while physically present in the courtroom if he or she so requests. If the defendant decides not to exercise the right to be physically present in the courtroom, he or she shall execute a written waiver of that right. A judge may order a defendant's personal appearance in court for the initial court appearance and arraignment. In a misdemeanor case, a judge may, pursuant to this subdivision, accept a plea of guilty or no contest from a defendant who is not physically in the courtroom. In a felony case, a judge may, pursuant to this subdivision, accept a plea of guilty or no contest from a defendant who is not physically in the courtroom if the parties stipulate thereto.

Cal. Penal Code § 977(c)(1).

Defendants argue that neither defendant could create a video appearance policy at the Sacramento County Superior Court because only the Superior Court has the power to establish such a policy. Defendants argue that California Rules of Court, Rule 1.150(c), prohibits all broadcasts of court proceedings, unless authorized by a judge or controlled by the court and court personnel. Defendants argue that court appearance via video conference is not, and could not be, a policy created by defendants, because its authorization and implementation require court approval. Defendants state that video court appearance is a policy of the California State Legislature and the courts, not defendants.

////

In his opposition, plaintiff alleges that he has obtained information from prison officials demonstrating that defendants created the court video appearance policy. (ECF No. 33 at 1-2.) Attached to plaintiff's opposition is an "Inmate Request for Interview Form" submitted by plaintiff on October 16, 2020. (Id. at 4.) In this form, plaintiff wrote:

> Sir, I have a question. On April 13, 2018, I was taken to a video court hearing in a back room here at the prison. I want to know who created the court's video appearance policy for us to attend by video and not to be taken to the courthouse and why? Last we spoke, you told me it was ADA Tucker decision who would appear via video and who go to courthouse.

(Id.)

In response, A. Konrad wrote, "I stand by that info Howell. It's the DA's call and policy which inmate appear by video & who appear in court." (Id.)

Plaintiff attaches to his opposition another "Inmate Request for Interview Form" in which he again asks who created the court's video policy. (Id. at 5.) In response, it appears that the Warden, J. Lynch responded, "The district attorney office decide who appear by video court, not the prison." (Id.)

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

However, Rule 12(b)(6) gives courts the discretion to accept and consider extrinsic materials and to convert a motion to dismiss to one for summary judgment. See Davis. v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) (citing Hamilton Material, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1207 (9th Cir. 2007); see also Fabbri v. Wilkinson, 2019 WL 5781914, at *1 (C.D. Ca. Nov. 5, 2019) (citing Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366, at 159 (3d ed. 2004) ("As the language of [Rule 12(b)(6) ] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").)

////

The undersigned declines to consider the Inmate Request for Interview Forms attached to plaintiff's opposition because they do not demonstrate that defendants created the at-issue video policy. Instead, these exhibits may demonstrate that defendants decide which inmates will appear via video at hearings, pursuant to the policy enacted by the California Legislature in California Penal Code § 677(c)(1).

The docket for People v. Kareem Howell, Case No. 18FE001413, reflects that plaintiff was scheduled to be arraigned on April 13, 2018. The transcript from April 13, 2018 reflects that the arraignment was continued so that plaintiff's counsel could meet with plaintiff. Therefore, the video arraignment scheduled for April 13, 2018, appears to have complied with California Penal Code § 677(c)(1), which permits initial appearances and arraignments by video.

The undersigned recommends that defendants' motion to dismiss be granted because defendants Schubert and Tucker did not create the policy allowing inmates to appear at their initial appearances and arraignments via video. The California State Legislature created this policy when it enacted California Penal Code § 667(c)(1). The trial court in plaintiff's case implemented the policy when it permitted to appear via video for his initial appearance and arraignment.

*Were Plaintiff's Sixth Amendment Rights Implicated by his Video Appearance on April 13, 2018?*[2]

The Sixth Amendment protects an inmate's right to confidential communication with his attorney regarding criminal matters. Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014).[3]

////

---

[2] Now that defendants have clarified that the California State Legislature created the at-issue video policy, and the trial court implemented the policy, defendants Schubert and Tucker may not be the proper defendants for plaintiff's Sixth Amendment claim. Nevertheless, in an abundance of caution, the undersigned discusses the merits of plaintiff's Sixth Amendment claim in these findings and recommendations.

[3] Plaintiff has not stated a potentially colorable First Amendment claim based on his inability to communicate confidentially with his counsel at the April 13, 2018 hearing. Claims regarding confidentiality of attorney-client communications involving correspondence may be analyzed under the First Amendment. See Hayes v. Idaho Correctional Center, 849 F.3d 1204, 1209 (9th Cir. 2017). The instant case does not involve correspondence between plaintiff and his counsel.

Defendants argue that plaintiff's Sixth Amendment rights were not violated by his court appearance via video on April 13, 2018 because the complaint and transcript from this proceedings fail to show that it prejudiced his defense. Defendants argue that the transcript shows that the hearing resulted in a continuance at the request of both plaintiff and Ms. Babineau, and that plaintiff stated that he did not want to meet with Ms. Babineau, saying, "She can write me. We ain't got to meet."

The transcript from the April 13, 2018 proceedings reflects that on that date, Ms. Babineau accepted appointment of plaintiff's case, acknowledged receipt of the complaint, waived further reading and advisement of rights and asked for the matter to be put over to July 13, 2018, because she had not had a chance to meet with plaintiff. (Transcript at 3.)

The trial court then asked plaintiff if he preferred to meet with his counsel before he was returned to California State Prison-Corcoran ("Corcoran"), or would he like to be returned early to Sacramento before his next hearing so that his counsel could meet with him. (Id.) Plaintiff responded that he wanted to go back to Corcoran and that, "[s]he can write me. We ain't got to meet." (Id.) The trial court then set the next hearing for July 13, 2018. (Id. at 5.)

The docket indicates that plaintiff was arraigned on July 13, 2018.

A "criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." Nordstrom, 762 F.3d at 910. When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment. See Williams v. Woodford, 384 F.3d 567, 584-85 (9th Cir. 2004).

Although plaintiff was unable to communicate confidentially with his lawyer at the April 13, 2018 hearing, plaintiff was not arraigned on that date as scheduled. Instead, plaintiff's lawyer requested a continuance *because* she had not had a chance to talk with plaintiff confidentially. While plaintiff alleges that he did not understand the charges brought against him and could not ask his lawyer to explain them, plaintiff's lawyer requested the continuance so that she could explain the charges to him. Because the trial court granted the request for a continuance, there was no deliberate interference with plaintiff's right to communicate confidentially with his

8

lawyer. Accordingly, defendants' motion to dismiss this claim should be granted.

Plaintiff also has a Sixth Amendment right to "'consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge.'" United States v. Calderon-Lopez, 2020 WL 2616034, at * 2 (D. Ariz. May 22, 2020) (quoting United States v. Resendiz-Guevara, 145 F.Supp.3d 1128, 1138 (M.D. Fla. Nov. 12, 2015)). To the extent plaintiff's complaint can be construed as alleging that his appearance at the April 13, 2018 hearing via video violated his right to consult with counsel, review the evidence and to prepare a defense, separate from his right to communicate confidentially with counsel, the undersigned finds no Sixth Amendment violation. As discussed above, the trial court granted his counsel's request for a continuance so that she could consult with plaintiff, review the evidence against him and prepare a defense. Therefore, plaintiff's Sixth Amendment rights, set forth above, were not violated.[4]

*Is Plaintiff's Claim Barred by Heck v. Humphrey?*

Citing the transcript from June 27, 2019, where plaintiff pled guilty to battery on an officer, defendants argue that plaintiff's Sixth Amendment claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The favorable termination rule laid out in Heck preserves the rule that claims which, if successful, would necessarily imply the invalidity of a conviction or sentence, must be brought by way of a petition for writ of habeas corpus. Muhammad v. Close, 540 U.S. 749, 750–51 (2004).

Assuming plaintiff had stated a potentially colorable Sixth Amendment claim, it is not clear that a finding in his favor would necessarily imply the invalidity of his conviction. Accordingly, defendants' motion to dismiss on the grounds that plaintiff's claim is Heck barred should be denied.

---

[4] Had the trial court denied counsel's request for a continuance, plaintiff's Sixth Amendment rights may have been violated.

Accordingly, for the reasons discussed above, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 32) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 14, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

How266.mtd